United States District Court
Southern District of Texas
ENTERED

JAN 18 2019

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FELIPE SOTELO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. B-18-7 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pending before the Magistrate Judge is Felipe Sotelo's ("Sotelo") petition to review the denial of a waiver of overpayment of Social Security disability benefits. Dkt. No. 1.[1] Sotelo also appears to raise a claim under the Privacy Act.

Having reviewed the record and the pleadings, the Court recommends that Sotelo's case be remanded to the Commissioner for further proceedings. The Administrative Law Judge's ("ALJ") determination, that Sotelo knew or should have known about his responsibility to report outside work to the Commissioner, is not supported by substantial evidence. It is further recommended that any claim made under the Privacy Act be dismissed.[2]

**I. Background**

This case is different than most Social Security Administration ("SSA" or "Social Security") appeals. In the vast majority of cases, a plaintiff is denied Social Security disability benefits at the administrative level and then appeals that decision. Here, Sotelo was previously declared disabled, but he earned additional "outside" income after that declaration. According to the SSA, Sotelo was ineligible for disability payments during the period that he earned over a certain amount of outside income. SSA alleged that Sotelo was

---

[1] Sotelo's minor children are also listed as plaintiffs in this case. The children received benefits as a result of Sotelo's disability, so the resolution of his claims also resolves their claims.

[2] Sotelo seeks a jury trial in this case. Notwithstanding this request, a claimant in a Social Security overpayment case is not entitled to a jury trial. Austin v. Shalala, 994 F.2d 1170, 1177-1178 (5th Cir. 1993).

overpaid Social Security disability income and sought to recover overpayment. Sotelo is appealing the determination that he has to repay the overpayment for the relevant periods.

In this first section, the Court will generally address the legal background of such cases; then examine the facts of Sotelo's administrative proceedings; and, finally turn to the procedural history in this Court.

**A. Legal Background**

Generally, after a person has been found to be eligible to receive Social Security disability benefits, they may not engage in "substantial gainful activity" and still continue to receive such benefits. 42 U.S.C. § 423(a). Substantial gainful activity is defined as "work activity that involves doing significant physical or mental activities" and that is done "for pay or profit." 20 C.F.R. § 404.1572.

If a person earns more than a specific amount of money within a month, they are deemed to have engaged in substantial gainful activity during that month and are not considered disabled for that month. 20 C.F.R. § 404.1574(b)(2). The threshold is adjusted each year based upon the national wage index. Id. For example, in 2019, the most that a generally disabled person can earn each month – and still be eligible for a social security disability payment – is $1,220; the most that a statutorily blind person[3] can earn in a month is $2,040. Determinations Of Substantial Gainful Activity (SGA), Social Security Administration, found at https://www.ssa.gov/oact/cola/sgadet.html. If a person earns more than such amounts in outside income during a month, they are not considered disabled for that month. 20 C.F.R. § 404.1574(b)(2).

A person who is receiving disability benefits is required to inform Social Security: (1) if he or she returns to work; or, if the work had been previously reported, (2) sees an increase in earnings from that work. 20 C.F.R. § 404.1588.[4]

---

[3] Statutory blindness is defined as central visual acuity of 20/200 or less in the better eye with the use of correcting lens. 20 C.F.R. § 404.1581.

[4] This portion of the regulation was enacted in 1981. Matter of Neavear, 674 F.2d 1201, 1202 (7th Cir. 1982). The regulation was later amended, effective December 2006, to require Social

2

If a person has engaged in substantial gainful activity while also receiving disability benefits, he or she is considered to have been overpaid by Social Security. <u>Sanders v. Barnhart</u>, 105 F. App'x 535, 537 (5th Cir. 2004). In the event of an overpayment, the Social Security Administration will seek to recoup those payments; that recovery is accomplished by reducing future benefit payments, or demanding repayment from an estate, or seizing tax refunds. 42 U.S.C. § 404(a)(1)(A).

The recoupment may be waived under certain specified circumstances. According to the statute, "there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). "In order to come within the waiver provisions of this section, a recipient must show, first, that he is without fault and, second, that recovery would defeat the purposes of the Act or would be against equity and good conscience." <u>Morgan v. Finch</u>, 423 F.2d 551, 553 (6th Cir. 1970). The burden is on the claimant to show that he or she qualifies for a waiver of the recovery of the overpayment. <u>Sipp v. Astrue</u>, 641 F.3d 975, 981 (8th Cir. 2011).

As to the first element, a claimant is considered to be at fault when he or she "fail[s] to furnish information which he knew or should have known to be material." 20 C.F.R. § 404.507(b). "For purposes of the Act's fault provisions, therefore, ignorance of the law is an excuse." <u>Corr for Corr v. Sullivan</u>, 725 F. Supp. 413, 415 (N.D. Ind. 1989).

The second element requires a showing that "[a]djustment or recovery will defeat the purposes of title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b). The failure to submit information, which the recipient knew or should have known was

---

Security to produce a receipt every time a recipient reported a change in work activity. <u>Rules for the Issuance of Work Report Receipts, Payment of Benefits for Trial Work Period Service Months After a Fraud Conviction, Changes to the Student Earned Income Exclusion, and Expansion of the Reentitlement Period for Childhood Disability Benefits</u>, 71 FR 66860-01 (November 17, 2006).

3

material, is sufficient to dictate repayment; consideration of the second element in such cases is unnecessary. See Tefera v. Colvin, 61 F. Supp. 3d 207, 211 (D. Mass. 2014) ("If a claimant fails to establish that [s]he was without fault, analysis of the second prong is unnecessary.") (quoting Yankun v. Barnhart, 473 F.Supp.2d 147, 150 (D. Mass. 2006)).

**B. Factual Background**

Sotelo was a police sergeant with the Weslaco Police Department before he was diagnosed with retinitis pigmentosa, which destroyed most of his vision. Dkt. No. 69-1, pp. 29; Dkt. No. 69-4, p. 23.

On December 5, 2005, Sotelo was found to be disabled, with his benefits retroactive to September 2005. Dkt. No. 69-1, p. 68. He received $1,234 in monthly disability benefits.[5] Id. In the letter granting him benefits, Sotelo was informed that the decision to grant benefits "was based on information you gave us" and that "it is important that you report changes to us right away." Id., p. 69. The letter also informed Sotelo that if he returned to work, "special rules allow us to continue your cash payments and health care coverage," and that he should contact Social Security and ask for more information. Id.

At the hearing before the administrative law judge in the instant case, Sotelo acknowledged that he received – from the SSA – a copy of a pamphlet entitled "Working While Disabled . . . How We Can Help." Dkt. No. 69-1, p. 26. The pamphlet was enclosed with the letter informing Sotelo that benefits were granted. Id. That pamphlet purportedly informed Sotelo that he had an obligation to inform Social Security if he began working again.[6] Id.

On March 6, 2010, Social Security sent Sotelo a letter informing him that his "disability ended because of substantial work" and that Sotelo was not entitled to disability

---

[5] Sotelo's two minor children also received monthly disability benefits based upon Sotelo's disability, but the exact amount of those benefits is not identified in the record. Dkt. No. 1.

[6] As discussed later, at the administrative hearing, Sotelo informed the Administrative Law Judge ("ALJ") that Sotelo was able to review all of the documents, using a "lighted magnifier." Dkt. No. 69-5, p. 29.

payments for May and June of 2008. Dkt. No. 69-1, p. 70. The letter stated that Sotelo had "10 days to give us more information" before Social Security made a final decision about whether he was still considered disabled.[7] Id.

It wasn't until March 6, 2015, that a Social Security claims representative determined that Sotelo had been overpaid during the periods in which he engaged in outside employment. Dkt. No. 69-4, pp. 33-34. The claims representative further found that Sotelo had not reported his work and income to Social Security, despite the fact that "he knew or should have known his work would affect payment of benefits." Id. Accordingly, the representative determined that Sotelo was not entitled to waiver of the overpayment. Id.

On June 3, 2015, Social Security sent Sotelo a letter. Dkt. No. 69-4, p. 11. The letter explained that all of Sotelo's Social Security benefits would be withheld through October 2018, to repay the prior overpayment of disability benefits – excepting a one-time payment of $25.40 in September 2018. Id. Then, starting in October 2018, Sotelo would again receive the full amount of his disability benefits. Id.

On March 15, 2016, Sotelo went to the Harlingen SSA Field Office to request a copy of his file and "spoke to Mrs. Imelda Ybarra, who told me she would submit my request." Dkt. No. 1, p. 5. Roughly one week later, Sotelo's sisters in Houston – with whom he once lived – reported to him that they were receiving notices from Social Security. Id. Sotelo believes that Ybarra sent notices to his prior addresses, including his prior addresses in New Mexico, and that his "personal information was compromised" by this action. Id.

Sotelo appealed the denial of waiver of overpayment. Dkt. No. 69-1, p. 18. On August 25, 2016, a hearing was held before a Social Security administrative law judge ("ALJ"). Id.

In advance of the hearing, Sotelo filed a statement, outlining his position and the exact

---

[7] It appears that in November 2013, Social Security determined that Sotelo remained disabled, and was entitled to benefits, except for the excess income earned. Dkt. No. 69-5, p. 36. Sotello has not worked since that 2013 determination. Dkt. No. 69-5, p. 36. Apparently, the 2013 determination did not change his earlier work status; nor how much he could earn in outside income; nor did it change the amount he was allegedly overpaid.

nature of his disagreements with Social Security's determination. Dkt. No. 69-3, pp. 29-34. The statement repeatedly referenced the administrative record and Sotelo's claims regarding that record. Id.

At the hearing, the ALJ asked Sotelo, "I'm assuming that you've had the opportunity to review the documents in the file. And I know because you are a statutorily blind individual not all of these documents are large enough that you would be able to read them. So, your daughter assisted you with reviewing the documents in the record?" Dkt. No. 69-5, p. 29. Sotelo responded, "No, no, Your Honor. I used a magnifier, a lighted magnifier." Id. The ALJ followed up with, 'Okay, so you looked yourself?" Id. Sotelo replied, "Yes." Id.

Later in the hearing, the ALJ asked Sotelo, "Now, during the course of all of this work[,] were you going into the field office and reporting all of your work activity?" Dkt. No. 69-5, p. 34. Sotelo replied, "Unfortunately, Your Honor, I did not. Now, I – I'll admit to that because I was not aware that I was supposed to do that. At one point or another either in one of the publications provided to me, I overlooked it, or I just didn't see it." Id.

At the hearing, despite what the earlier letter from Social Security informed Sotelo as to the amount to be withheld, Dkt. No. 69-4, p. 11, Sotelo stated that Social Security was only withholding $200 from each monthly check as reimbursement for the overpayment. Dkt. No. 69-5, p. 34.

During the hearing, Sotelo also explained that his employment earnings for September and October 2005 were part of an out-of-court settlement with his employer. Dkt. No. 69-5, pp. 37-38. According to Sotelo, he would continue to be paid as if he worked those months, but was not required to actually attend work. Id. The ALJ allowed Sotelo 30 days to produce documents from his employer demonstrating that the amounts received were not earned income, but rather, had been paid as part of a settlement agreement. Id., p. 42.

On October 19, 2016, the ALJ issued a decision, finding that Sotelo was not entitled to waiver of the overpayment of disability benefits. Dkt. No. 69-1, p. 27. The ALJ first found that Sotelo was overpaid $77,378.30 "during the period April 2008 through June 2008, August 2008, December 2008, and January 2010 through May 2013." Dkt. No. 69-1, p. 20.

The ALJ also found that Sotelo's "trial work period ended October 2006 and the extended period of eligibility began November 2006 and had now ended." Id, p. 20. It appears that the overpayment amount covers disability benefits paid to both Sotelo and his minor children.

The ALJ's decision stated that, while Sotelo claimed he was not at fault for the overpayment, "at the hearing, he acknowledged receiving the pamphlet 'Working While Disabled . . . How We Can Help" with the original notice of award, dated December 2005. This supports my conclusion that [Sotelo] should have been aware of his reporting responsibility to report any work activity." Dkt. No. 69-1, p. 26. Accordingly, the ALJ found that Sotelo was at fault for the overpayment, based upon the conclusion that Sotelo knew or should have known that he was required to report any work activity. Id. Indeed, the only evidence cited by the ALJ, as supporting her conclusion, was Sotelo's receipt of the pamphlet. The ALJ's decision implies that the pamphlet included information about the responsibility to report work activity. Id. As to Sotelo's claims regarding the out of court settlement, the ALJ noted that Sotelo had been "unable to provide supporting documentation of the settlement agreement." Id.

Because the ALJ found that Sotelo was "not without fault in causing or receiving the overpayment," she determined that it was unnecessary to decide "the [additional] issues [of] whether requiring repayment would be against equity and good conscience or defeat the purposes of the [Social Security] Act." Dkt. No. 69-1, p. 26.

On November 22, 2017, the Social Security Appeals Council denied Sotelo's timely request for review of the ALJ's decision. Dkt. No. 69-1, p. 5.

### C. Procedural History

On January 11, 2018, Sotelo timely filed – in this Court – an appeal of the ALJ's decision. Dkt. No. 1. Sotelo claimed that he was never given documents in a format that he could read and that Social Security representatives had consistently failed to explain to him why he was considered to have been overpaid. Id. Sotelo requested that the overpayment be waived and further claimed that Social Security had discriminated against him based upon a disability. Id. Finally, without saying how, or even what the content of the purported

7

notices included, Sotelo asserted that his "personal information was compromised" when Ybarra mailed the notices to his prior addresses. Id., p. 5.

On February 5, 2018, Sotelo filed a motion to proceed in forma pauperis. Dkt. No. 4. On that same day, the Court granted the motion and ordered that the Clerk's Office serve the Commissioner. Dkt. No. 5.

On April 18, 2018, the Commissioner filed an answer. Dkt. No. 28.

On July 13, 2018, Sotelo timely filed his brief, arguing that he was discriminated against because he was not given documents in a readable format and "had not been made aware of the allegations against him until the date of the hearing." Dkt. No. 51.

On October 31, 2018, the Commissioner timely filed her response, arguing that "substantial evidence supports the ALJ's determination that [Sotelo] was at fault for the overpayment." Dkt. No. 62. As to the claim that Sotelo was discriminated against because the documents were not in a readable format, the Commissioner argues that this claim "has no merit" because Sotelo "testified otherwise at the hearing." Id., pp. 4-5. As for Sotelo's claim – that he was unaware of the allegations against him – the Commissioner argues that, prior to the hearing, Sotelo filed a statement with the ALJ, which cited the record. Id.

On November 14, 2018, Sotelo filed a reply brief, which reiterated his argument that he was not given documents in a format that he could read "without accommodation." Dkt. No. 73. In that filing, he again asserted, without specifics, that Ybarra's mailing of the notices to his prior addresses violated the Privacy Act. Id.

**II. Applicable Law**

    **A. Administrative Review**

The Court's review of the Commissioner's decision is limited to two inquiries: (1) whether the final decision is supported by "substantial evidence;" and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." Spellman v.

Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Moore v. Sullivan, 919 F.2d 901, 904 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The decision by the ALJ must "stand or fall" on the rationale set forth in the ALJ's opinion. Newton v. Apfel, 209 F.3d at 455. The Court will not uphold the ALJ's decision by finding or creating a different, better, or more adequate basis. "We may affirm only on the grounds that the Commissioner stated for his decision." Copeland v. Colvin, 771 F.3d 920, 923 (5th Cir. 2014).

Furthermore, the Court generally employs a harmless error standard in reviewing administrative proceedings. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required"). The Court will not reverse a judgment unless "the substantial rights of a party have been affected." Id. (remand was not warranted when the claimant would not have been found disabled, even if the Court applied his proffered standard).

### B. In Forma Pauperis

Sotelo is proceeding in forma pauperis. Dkt. No. 5. As relevant here, 28 U.S.C. § 1915 provides that if a plaintiff is proceeding in forma pauperis, the Court "shall dismiss the case at any time if the court determines that" the plaintiff's complaint "fails to state a claim upon which relief can be granted." 28 U.S.C. § 1915(e)(2)(emphasis added).

Dismissal under § 1915(e)(2)(B)(ii) – for failure to state a claim upon which relief can be granted – is judged by the same standard as a motion to dismiss under FED. R. CIV. P. 12(b)(6). Rhine v. City of Mansfield, 499 Fed. App'x. 334, 335 (5th Cir. 2012) (unpubl.) (citing Black v. Warren, 134 F.3d 732, 734 (5th Cir. 1998)).

9

**C. Dismissal For Failure to State a Claim**

"A motion to dismiss under Rule 12(b)(6) tests only the formal sufficiency of the statements of the claims for relief. It is not a procedure for resolving contests about the facts or merits of the case . . . . [T]he Court must take the plaintiffs' allegations as true, view them in a light most favorable to plaintiffs, and draw all inferences in favor of the plaintiffs." Askanase v. Fatjo, 828 F. Supp. 465, 469 (S.D. Tex. 1993) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Garrett v. Commonwealth Mortgage Corp. of Am., 938 F.2d 591, 593 (5th Cir. 1991)).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Consistent with this requirement, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 152-53 (5th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 589. "[R]egardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." McConathy v. Dr.Pepper/Seven Up Corp., 131 F.3d 558, 561 (5th Cir. 1998).

Whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**D. Privacy Act**

"The Privacy Act of 1974 safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used." Henke v. U.S. Dep't of Commerce, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (ellipses original).

As relevant here, there are four elements to a private right of action under the Privacy Act: "(1) the information [disclosed] is a 'record' in a 'system of records'; (2) the agency disclosed the information; (3) the disclosure had an adverse effect on him; and (4) the disclosure was willful." Jacobs v. Nat'l Drug Intelligence Ctr., 423 F.3d 512, 516 (5th Cir. 2005).

**III. Analysis**

In analyzing Sotelo's claims, the Court is required to construe allegations by pro se litigants liberally, to ensure that their claims are given fair and meaningful consideration, despite their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). While the Court will "read pro se complaints liberally, pro se litigants must still comply with the law and procedural rules." Washington v. E. Baton Rouge Par. Sch. Sys., 471 F. App'x 306 (5th Cir. 2012).

The first question in this case is whether the ALJ's decision is supported by substantial evidence. The second is whether Sotelo was discriminated against, because he was not given documents in a readable format and was not aware of the allegations against him. Finally, the analysis turns to whether the actions of the Social Security representatives violated the Privacy Act.

**A. Substantial Evidence**

As noted earlier, the ALJ concluded that Sotelo was overpaid $77,378.30, based on his earnings "during the period [of] April 2008 through June 2008, August 2008, December 2008, and January 2010 through May 2013." Dkt. No. 69-1, p. 20. The record is clear that

Sotelo was engaged in substantial gainful activity during these periods. Dkt. No. 69-4, p. 15. Indeed, Sotelo seems to take no issue with the fact that he was overpaid.

Further, the question is not who bears the greatest fault for the overpayment, but rather whether Sotelo was blameless for receiving the overpayment. See Richard v. Commissioner of Social Security, et al., 2017 WL 3529263, at *8 (M.D. La. July 31, 2017), report and recommendation adopted sub nom. Richard v. Lambie, 2017 WL 3528604 (M.D. La. Aug. 16, 2017) ("the question of 'fault' as used in 'without fault' only applies to the individual, and the shared 'fault' of the [Commissioner] does not dictate whether the claimant is also at fault."). If Sotelo bore any of the blame for the overpayment, then he bares the obligation to repay the amount he was overpaid and is not entitled to waiver of recovery of the overpayment. Sanders v. Barnhart, 105 F. App'x 535, 536 (5th Cir. 2004) (unpubl.) (citing Bray v. Bowen, 854 F.2d 685, 686-87 (5th Cir. 1988)).

As previously noted, a claimant is considered to be at fault for "failure to furnish information which he knew or should have known to be material." 20 C.F.R. § 404.507(b). The ALJ observed that, in his testimony, Sotelo acknowledged receiving a pamphlet entitled "Working While Disabled . . . How We Can Help," enclosed with his 2005 original notice of benefits. Dkt. No. 69-1, p. 26. The ALJ wrote that the receipt of the pamphlet "supports my conclusion that [Sotelo] should have been aware of his reporting responsibility to report any work activity." Dkt. No. 69-1, p. 26. A copy of the pamphlet was not included in the administrative record, so the Court does not know what the 2005-era pamphlet told Sotelo about his duty to report outside work and income. What is clear is that the ALJ relied on the obligations imposed by the publication to demonstrate that Sotelo should have been aware of his reporting requirements. Id.

The Court must determine whether the mere citation to the pamphlet suffices as "more than a mere scintilla" of evidence. Copeland, 771 F.3d at 923. Sotelo received the pamphlet in December 2005, when he was awarded disability benefits. Dkt. No. 69-1, p. 68. No copy of the pamphlet that he was sent is contained in the administrative record and it does not

appear that the edition of the pamphlet that was sent to him is otherwise publicly available. It is highly probable – based solely upon the pamphlet's title – that the pamphlet discussed some of the rules and regulations related to working after being declared disabled. Indeed, the letter awarding Sotelo benefits informed him that if he desired "more information about how work and earnings affect disability benefits," he should read "Working While Disabled . . . How We Can Help." Dkt. No. 69-1, p. 69. Despite this intuitive determination, the Court cannot conclude that the pamphlet standing alone constitutes substantial evidence without knowing what the pamphlet actually said about the reporting requirements.

Simply put, there is no way for the Court to determine, from the administrative record before it, that Sotelo should have been aware of his "responsibility to report any work activity" based solely on the contents of the pamphlet. In fact, the pamphlet is the only evidence cited by the ALJ in support of her conclusion that Sotelo knew or should have known about his duty to report.

Moreover, it is unclear whether the Court may examine other evidence in the record, which was not cited by the ALJ, to determine whether the ALJ's decision was supported by substantial evidence. The Fifth Circuit has held that courts are to review the reasoning in the ALJ's decision and are not to consider reasoning which is not present in the decision. Kneeland v. Berryhill, 850 F.3d 749, 761 (5th Cir. 2017); see also Copeland v. Colvin, 771 F.3d 920, 923 (5th Cir. 2014) (the Court "may affirm only on the grounds that the Commissioner stated for his decision.").

The ALJ did include language in her decision which stated that she "must consider all available evidence related to the overpayment." Dkt. No. 69-1, p. 19. That consideration does not save the decision. The Fifth Circuit has concluded that "boilerplate language about carefully considering the entire record does not constitute an explanation" for an ALJ's decision. Kneeland, 850 F.3d at 761. Moreover, the Fifth Circuit has ever explicitly stated whether a district court can consider evidence in the record – which was not cited by the ALJ – in determining whether the ALJ's decision is supported by substantial evidence.

13

Some courts have held that "[e]vidence not cited by an [ALJ] may be relied upon as substantial evidence in support of his or her decision." Christopher B. v. Berryhill, No. 2:17-CV-00502-JAW, 2018 WL 5786210, at *3 (D. Me. Nov. 4, 2018), report and recommendation approved, No. 2:17-CV-00502-JAW, 2019 WL 97019 (D. Me. Jan. 3, 2019); Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001) ("Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council.").

Other courts, however, have concluded differently. Those courts have decided that the Court cannot "consider evidence contained in the administrative record not mentioned by the ALJ to determine whether the decision is supported by substantial evidence." Jones v. Astrue, 872 F. Supp. 2d 428, 432 (E.D. Pa. 2012) (citing Fargnoli v. Massanari, 247 F.3d 34 (3d Cir. 2001)); see also Lamanna v. Comm'r of Soc. Sec., 116 F. App'x 354, 357 (3d Cir. 2004) (reviewing court cannot consider Social Security Rulings that the ALJ did not cite in his or her decision); Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (the Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ-not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002) ("regardless [of] whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine [the Court's] review to the reasons supplied by the ALJ.").

In light of this split, the Court limits its recommendation to the reasons actually cited by the ALJ in reaching her decision. Admittedly, there is evidence in the record that supports the ALJ's finding, that Sotelo should have known about his responsibility to inform Social Security about his outside work and income. That evidence appears in the letter awarding

benefits, which told Sotelo that he had a duty to report changes in work and income to Social Security. Dkt. No. 69-1, p. 69. That evidence, however, was not discussed by the ALJ in her determination that Sotelo knew or should have known about his responsibility to report outside work and income. From that, the Court cannot ascertain whether that evidence was "not credited or simply ignored." Schmidt v. Comm'r Soc. Sec., 465 F. App'x 193, 199 (3d Cir. 2012). As such, the case should be remanded to the Commissioner so that the ALJ can consider this evidence in determining whether Sotelo knew or should have known about his responsibility to report any work activity to Social Security.

Thus, given the ALJ's decision in this case, the determination of Sotelo's fault was not supported by substantial evidence. Accordingly, the case should be remanded to the Commissioner for further proceedings.

**B. Discrimination**

Sotelo asserts that he was discriminated against because he was never given the administrative record in a readable form that made him aware of the claims against him. Given the recommendation that the case be remanded, this claim should be dismissed as moot and Sotelo may re-urge any arguments in further administrative proceedings.

**C. Privacy Act**

Finally, it appears that Sotelo is claiming that Social Security violated the Privacy Act when it mailed notices to his prior addresses. Despite the invocation, Sotelo has failed to state a claim upon which relief can be granted.

According to the complaint, on March 15, 2016, Sotelo went to the Harlingen SSA Field Office to request a copy of his file and "spoke to Mrs. Imelda Ybarra, who told me she would submit my request." Dkt. No. 1, p. 5. As noted earlier, approximately one week later, Sotelo's sisters in Houston reported to Sotelo that they were receiving notices from Social Security. Id. Sotelo argues that Ybarra sent notices to his prior addresses, including his prior addresses in New Mexico, and that his "personal information was compromised" by this action. Id. According to Sotelo, these acts by Ybarra, violated the Privacy Act. Dkt. No. 73,

15

p. 5. Despite these allegations, Sotelo has not identified the content of the notices or how that content did, in fact, impact him.

As set out earlier, to state a claim for relief under the Privacy Act, Sotelo must plead facts showing: (1) the disclosed information was a "record," within a "system of records"; (2) the agency disclosed the information; (3) the disclosure had an adverse effect on him; and (4) the disclosure was willful. Jacobs, 423 F.3d at 516. In order to state a claim, Sotelo must plead facts as to each element. Id. He has failed to meet this standard.

The Court will assume, for purposes of this recommendation, that Social Security disclosed a record which was held in a system of records, meeting the first two elements. Notwithstanding these assumptions, Sotelo has failed to plead any facts showing that the mailings had an adverse effect on him; such as loss of employment, or that his identity was stolen or otherwise compromised, or that the disclosure negatively impacted Sotelo's Social Security proceedings. Hernandez v. Johnson, 514 F. App'x 492, 500 (5th Cir. 2013) (plaintiff must plead facts showing that any adverse effects were caused by the unauthorized disclosures). The mere allegation that Sotelo's personal information "was compromised" is not sufficient to show that he suffered adverse effects. See Doe v. Harris Cty., Texas, 2018 WL 6039171, at *1 (5th Cir. Nov. 16, 2018) (unpubl.) ("naked assertions without any factual enhancement," do not survive a Rule 12(b)(6) analysis).

Furthermore, Sotelo has pled no facts showing that the disclosure was willful, as opposed to merely negligent. Raz v. Oakes, 48 F. App'x 481 (5th Cir. 2002) (rejecting Privacy Act claim when all evidence showed that "the disclosure was merely negligent and not willful or intentional."). Accordingly, given the failure to allege the required facts – or even to allege facts from which such a determination could be made – the claim should be dismissed.

It is not clear, however, that Sotelo meant to raise a freestanding Privacy Act claim. In order to ensure that he is not unfairly barred from pursuing this claim, it should be dismissed without prejudice. If Sotelo intends to raise a freestanding Privacy Act claim, he

should be permitted to file a separate lawsuit which outlines his claims. See Memon v. Allied Domecq QSR, 385 F.3d 871, 874 (5th Cir. 2004) ("dismissal with prejudice is an extreme sanction that deprives a litigant of the opportunity to pursue his claim.").[8]

## IV. Recommendation

It is recommended that Felipe Sotelo's petition to set aside the Commissioner's decision be granted and the case be remanded to the Commissioner for further proceedings.

It is also recommended that all discrimination claims be dismissed without prejudice as moot.

Finally, it is further recommended that any claims made under the Privacy Act be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### A. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Fernando Rodriguez, Jr., United States District Judge. 28 U.S.C. § 636(b)(1). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court, except upon grounds of

---

[8] The Court notes that the Privacy Act has a two year statute of limitations, which accrues once the plaintiff knows or has reason to know of the violation. 5 U.S.C. § 552a(g)(5); Nwangoro v. Dep't of Army, 952 F. Supp. 394, 397 (N.D. Tex. 1996). Sotelo would have been aware of the alleged violation in March 2016, giving him until March 2018 to file a complaint. Dkt. No. 73, p. 5. Sotelo filed his claims in this case on January 11, 2018. Dkt. No. 1. Equitable tolling is available when, "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." Clymore v. U.S., 217 F.3d 370, 375 (5th Cir. 2000), as corrected on reh'g (Aug. 24, 2000). Because Sotelo did not clearly state if he was making a Privacy Act claim, his claim in this case amounts to a defective pleading, for which reason equitable tolling should apply to any future claims that are timely filed. Given that Sotelo filed his complaint in this case two months before the deadline expired, any separate Privacy Act claim would need to be filed within two months of this case being closed.

plain error or manifest injustice. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

      DONE at Brownsville, Texas, on January 18, 2019.

                                       _____
                                       Ronald G. Morgan
                                       United States Magistrate Judge